UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM A. GALVIN, | ) |
| | ) |
| Petitioner, | ) |
| v. | ) Case No. 4:19-cv-03229-SEP |
| | ) |
| LADONNA M. BUCKNER, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

Before the Court is Petitioner William Galvin's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  Doc. [1].  For the reasons set forth below, the petition is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is an inmate at the South Central Correctional Center in Licking, Missouri, where he is serving a twenty-five year sentence on his conviction for second-degree murder.  On direct appeal, the Missouri Court of Appeals summarized the facts of his case as follows:

> Defendant lived with his girlfriend and her mother, Bonnie Brown (the Victim).  On May 9, 2011, between 9:00 and 9:30 a.m., Defendant spoke with the teller at his bank, telling her that the Victim had died of an overdose.  The teller testified that Defendant smelled of alcohol.  Later that morning, around 10:20 a.m., Defendant called 911 to report a break-in and murder, telling the dispatcher that he had just returned home from Springfield to discover the door kicked in and the Victim dead in her bedroom.  The responding officers testified Defendant was "noticeably intoxicated."  During his interview with police, Defendant alternatively stated that he had returned home from Springfield early in the day and not discovered the Victim until after he had gone to the bank, and that he had discovered the Victim's body and then gone to the bank, calling 911 when he returned home.  He later agreed he had not gone to Springfield at all.

> Michael Pavia, an inmate with Defendant, testified Defendant told him he had not meant to kill the Victim.  Defendant and the Victim had argued in the evening, but had gone their separate ways.  He then drank vodka all night, and when the argument resumed in the morning, he had strangled her.  When he could not revive her, he kicked in the door to make it look like a break-in.

> Sergeant Ryan McCarrick testified to the following.  He had been employed with the Lincoln County Sheriff's Office since 2005, and he was a member of the Major Case Squad, which is a group of Metropolitan-area law-enforcement agencies that share manpower to handle serious crimes, such as homicides.  Since becoming an investigator, he had had 600 hours of training, including attending the Medical/Legal Death Investigation course at St. Louis University School of Pathology, a four-day Death and Homicide class, a three-day Child Death and Homicide class, two International Homicide Investigator seminars, and the Medical and Coroner's symposium.  As part of the training, he had learned signs to look for in determining whether a death was "potentially

1

from a homicide," including strangulation cases. The trial court overruled defense counsel's objection that Sergeant McCarrick was not testifying as an expert, and he testified that in strangulation cases he looked for ligature marks, petechiae in the eyes, and bluish discoloration to the upper torso, head, and neck.

In this case, when Sergeant McCarrick arrived at the scene and observed the body of the Victim, he noted her upper torso, head and neck were blueish, there were red marks on her neck, and there were predominant petechiae in both eyes. Based on his initial observations and the circumstances of the case, he called the Major Case Squad.

Dr. Kamal Sabharwal, the medical examiner who performed the autopsy, testified that he had concluded the Victim's cause of death was strangulation and the manner of death was homicide. He testified to the signs of strangulation he noted on the Victim's body. While he also noted the Victim had heart disease, he testified, "the Victim's other injuries were more significant than the cardiac disease as far as causing her death in this case." By contract, Defendant presented evidence from Dr. Thomas Young, a self-employed forensic pathologist, who reviewed the autopsy report, the Victim's medical records, and photographs of the crime scene and autopsy, and concluded the Victim died from heart disease and not strangulation.

Leatha Clark, the Victim's daughter and Defendant's girlfriend, testified that at the time of the murder, she was in the county jail. Clark testified that when she walked through the house after the murder, she found an empty bottle of vodka in her and Defendant's room. Clark agreed that Defendant was "a drinker," and he had been told to quit after having gall-bladder surgery. Defendant had agreed to quit drinking, but Clark confirmed that the empty bottle of vodka in their room was not hers. She further testified the Victim would argue with Defendant about his drinking. She stated that the Victim "liked [Defendant] better when he didn't drink," and that he was loud and made the Victim "nervous" when he drank. On cross-examination, Defendant's counsel introduced a letter the Victim had sent to Clark in jail showing the Victim and Defendant got along well.

During closing arguments, defense counsel argued: "This was a family. The Victim and Defendant lived in the same house and Leatha Clark lived in the same house and they all got along and they all shared expenses and they all laughed together; they cared about each other. There's no evidence to the contrary." In response, the State argued: "This was a happy family all living together under one roof except for the Victim was scared of Defendant because he was a drunk and they would have fights when he would drink." Defense counsel objected on the basis of mischaracterizing the evidence, but the trial court overruled the objection.

At the close of evidence, the trial court found Defendant guilty of second-degree murder and sentenced him to twenty-five years' imprisonment in the Missouri Department of Corrections.

Doc. [12-4] at 2-4.

Petitioner's convictions and sentences were affirmed on direct appeal. Doc. [12-4] at 8. Petitioner then filed a pro se Rule 29.15 motion for post-conviction relief, after which counsel was appointed for his state court post-conviction proceedings. Doc. [12-10] at 5, 12-30, 37. Petitioner filed a timely amended Rule 29.15 motion seeking relief on grounds that his trial

2

counsel was ineffective. *Id.* at 44-84. The motion court denied the amended petition, and the Missouri Court of Appeals affirmed the motion court's decision after an evidentiary hearing. *Id.* at 103-110; Doc. [12-9].

Petitioner then filed a habeas petition asserting four claims for relief: (1) the trial court erred when it overruled defense counsel's objection to the State's closing arguments; (2) the trial court erred when it overruled defense counsel's objection to Officer Ryan McCarrick's testimony; (3) trial counsel was ineffective in failing to call neuropsychologist Dr. Robert Heilbronner as a witness during the guilt phase of trial; and (4) trial counsel was ineffective in failing to call Dr. Heilbronner as a witness during the sentencing phase of trial. Respondent argues that Petitioner's claims were considered on the merits by the state court and its determinations are entitled to deference by this Court.

## LEGAL STANDARD

A federal judge may issue a writ of habeas corpus freeing a state prisoner if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The judge must not issue a writ, however, if an adequate and independent state law ground justified the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977).

"Federal habeas review exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). Accordingly, "[i]n the habeas setting, a federal court is bound by [the Antiterrorism and Effective Death Penalty Act (AEDPA)] to exercise only limited and deferential review of underlying state court decisions." *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. § 2254). Under AEDPA, a federal court shall not grant relief to a state prisoner with respect to any claim that was adjudicated on the merits in the state court proceedings unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

3

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "[A] state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (citations and internal quotation marks omitted); *see also Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (petitioner can rebut by clear and convincing evidence presumption that state court factual findings are correct).

**DISCUSSION**

**I.      Grounds 1 and 2: Petitioner's Claims of Trial Court Error**

In Ground 1, Petitioner argues that the trial court erred when it overruled defense counsel's objection to the State's closing arguments. In Ground 2, Petitioner contends that the trial court erred when it overruled defense counsel's objection to Officer Ryan McCarrick's testimony. The Missouri Court of Appeals considered both of these arguments on direct appeal, and concluded that they were without merit. As further discussed below, the determination of the Missouri Court of Appeals is entitled to deference and habeas relief is denied on Grounds 1 and 2.

"In the habeas context, rules of evidence and trial procedure are usually matters of state law." *Bucklew v. Luebbers*, 436 F.3d, 1010, 1018 (8th Cir. 2006). "It is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle*, 502 U.S. at 67. The admissibility of evidence at trial is ordinarily a matter of state law and "will not form the basis for federal habeas relief." *Turner v. Armontrout*, 845 F.2d 165, 169 (8th Cir. 1988) (citing *Manning-El v. Wyrick*, 738 F.2d 321, 322 (8th Cir.), *cert. denied*, 469 U.S. 919 (1984)); *see also Nebinger v. Ault*, 208 F.3d 695, 697 (8th Cir. 2000) ("Rulings on the evidence in state trials rarely rise to the level of a federal constitutional violation.").

"A federal court may, however, grant habeas relief when a state court's evidentiary ruling . . . is so prejudicial that it amounts to a denial of due process." *Turner*, 845 F.2d at 169. "In a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th

4

Cir. 1995). Accordingly, reversal of a state court evidentiary ruling is appropriate only if "the petitioner . . . shows that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.'" *Anderson*, 44 F.3d at 679 (internal citation omitted). To carry that burden, the petitioner must show "that absent the alleged impropriety the verdict probably would have been different." *Id.* In making that determination, the federal habeas court "must review the totality of the facts in the case and analyze the fairness of the particular trial under consideration." *Hobbs v. Lockhart*, 791 F.2d 125, 128 (8th Cir. 1986). "No due process violation [exists], even if the evidence was erroneously admitted, if other evidence of guilt is so overwhelming that the error is harmless." *Wedemann v. Solem*, 826 F.2d 766, 767 (8th Cir. 1987) (citing *Hobbs v. Lockhart*, 791 F.2d 125, 127-28 (8th Cir. 1986)).

Petitioner argues that the State mischaracterized the facts during closing argument when the prosecutor stated, "Ms. Brown [the Victim] was scared of Mr. Galvin because he was a drunk and they would have fights when he would drink." Doc. [1] at 12. Petitioner asserts that the evidence showed only that "Ms. Brown became nervous because [he] was loud when he drank and that she liked him better when he did not drink." *Id.* Therefore, Petitioner argues, the trial court erred when it overruled defense counsel's objection on this point. *Id*.

Petitioner raised the same point on direct appeal (Doc. [12-1] at 22) and the Missouri Court of Appeals denied the claim on its merits, stating:

> [Galvin] asserts on appeal that the State's characterization of [Galvin] during closing arguments as "a drunk" of whom the Victim was "scared" when he drank was both an improper mischaracterization of the evidence and was prejudicial. His argument fails on both fronts. The State, just like the defense, has wide latitude in drawing inferences from the record when presenting its closing argument. The State has the right to give its view of the evidence and the credibility of the witnesses. Clark testified at trial that [Galvin] was "a drinker" and that she discovered an empty bottle of vodka under his bed although he had been instructed not to drink following surgery. She stated that [Galvin] and the Victim argued about his drinking and that his drinking made her "nervous." The words "scared" and "nervous," while not identical, are variations of a theme. We conclude, looking at the whole record, it was not improper for the State to infer the Victim was scared of [Galvin] when he drank because the evidence included that they argued about his drinking and he made her nervous when he drank.
>
> Moreover, [Galvin] was not prejudiced by the State's characterization, because he has not shown that there was a reasonable probability the verdict would have been different had the trial court sustained his objection to the State's argument. In a bench trial, we presume the trial court disregards improper evidence in reaching its judgment, unless the record was clear the trial court considered and relief on the inadmissible evidence. Assuming, arguendo, that the State's comment during closing arguments was improper, there was no

5

> evidence here that the trial court considered or relied on the State's inference. Rather, we trust that the trial court here was well able to distinguish as necessary between Clark's testimony that [Galvin] made her mother "nervous" when he drank, and the State's inference that she was "scared" of [Galvin] when he drank. A trial court is skilled in evaluating each side's argument as they present their analyses of the facts to the court.

Doc. [12-4] at 2-4 (citations omitted and cleaned up).

Petitioner also argues that the trial court erred by overruling defense counsel's objection to Officer Ryan McCarrick's testimony regarding medical evidence. Doc. [1] at 15. He asserts that Officer McCarrick was not qualified as an expert to testify about evidence regarding whether a person had been killed by strangulation. *Id*. The Missouri Court also considered and rejected this argument, stating:

> It is permissible for an officer to testify concerning their observation of a fact based on the witness' experience as a police officer. Sergeant McCarrick testified he had been employed with the sheriff's office for ten years and had had 600 hours of training, including courses and seminars in investigating homicides. Through his training and experience, he had learned signs to look for in determining whether a death was potentially a homicide, including strangulation cases. Sergeant McCarrick further testified that when he observed the Victim, he noted her upper torso, head and neck were blueish, there were red marks on her neck, and there was predominant petechiae in both eyes, which was consistent with the signs of strangulation he had learned in his training as a police officer. He did not testify to the Victim's cause of death but rather to why he suspected a homicide and decided to involve the Major Case Squad. Testifying to the signs of a homicide was well within his expertise as an experienced deputy sheriff.

Doc. [12-4] at 7-8 (citations omitted and cleaned up).

The Missouri Court of Appeals' decisions on both claims are reasonable and congruent with applicable law, and thus deserving of deference. *See United States v. Mullins*, 446 F.3d 750, 760 (8th Cir. 2006) (Prosecutor can argue "a personal interpretation of the evidence" in closing); *Pederson v. Fabian*, 491 F.3d 816, 829 (8th Cir. 2007) ("In its entirety, the prosecutor's closing argument was not such that it 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *State v. Forest*, 183 S.W.3d 218, 228 (Mo. banc 2006) ("The State, just like the defense, has wide latitude in drawing inferenced from the record when presenting its closing argument."); *see also United States v. Parker*, 32 F.3d 395, 400 (8th Cir. 1994) (no error in allowing police officer to testify on topic about which jurors would lack familiarity where officer has developed specialized knowledge); *State v. Woodson*, 140 S.W.3d 621, 631 (Mo. Ct. App. 2004) (permissible for officer to testify to his observation of fact founded on his experience as a police officer).

6

Even if this Court were to agree with Petitioner that the state evidentiary rulings were erroneous—a question on which it does not take a position—not every trial court error amounts to a constitutional deprivation. Petitioner has failed to show that sustaining either of his objections at trial would have resulted in a different verdict. That is particularly true in the context of a bench trial, where "we presume that a judge . . . will use evidence properly, mitigating any prejudice." *United States v. DNRB, Inc.*, 895 F.3d 1063, 1068 (8th Cir. 2018). Upon review of the record, the undersigned "cannot say that the alleged evidentiary errors, when viewed in context of the entire trial, deprived [Petitioner] of a fair trial." *Anderson*, 44 F.3d at 679. Petitioner's claims in Grounds 1 and 2 are denied.

**II.     Grounds 3 and 4:  Ineffective Assistance of Counsel**

Grounds 3 and 4 both assert ineffective assistance of counsel. Petitioner claims that his trial counsel was ineffective in failing to call neuropsychologist Dr. Heilbronner during both the guilt (Ground 3) and penalty (Ground 4) phases of his trial. Petitioner argues that Dr. Heilbronner would have testified that Petitioner suffered brain damage from a traumatic head injury he sustained in an accident in 2004, and that the injury was exacerbated by his alcohol abuse and Xanax consumption. Petitioner asserts that this testimony would have explained Petitioner's odd behavior and contradictory, incriminating statements he made after the victim's death. Petitioner asserts that had the trial judge heard such evidence he would have believed his defense theory that the victim died of a heart attack, and would not have found him guilty. Petitioner also argues that even if the judge nonetheless found him guilty, Dr. Heilbronner's testimony would have provided strong mitigating evidence that would likely have resulted in a lesser sentence. Petitioner raised these claims in a post-conviction Rule 29.15 motion, the motion court rejected them, and the Missouri Court of Appeals affirmed that decision.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, Petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Id.* at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014); *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011). To show deficient performance, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be

7

highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that, "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)). In the habeas context, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699. "This standard was meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" *Williams*, 695 F.3d at 831 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). "If the state court reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions, then federal review under AEDPA is at an end." *Id.* at 832 (internal quotation marks omitted).

In Ground 3, Petitioner argues that he was denied effective assistance of counsel when his trial counsel trial failed to call neuropsychologist Dr. Heilbronner during the guilt phase of his trial. Doc. [1] at 18. Petitioner contends that Dr. Heilbronner's testimony about Petitioner's traumatic brain injury, which was worsened by his abuse of alcohol and Xanax, would have explained his odd and inculpatory behavior in the immediate aftermath of the victim's death. *Id.*

Petitioner raised this claim in his post-conviction Rule 29.15 motion, and after the motion court denied the claim, he appealed that decision. The Missouri Court of Appeals, applying the *Strickland* standard, agreed with the motion court and denied Petitioner's claim as follows:

> The choice of witnesses is generally a matter of trial strategy that will not support a claim of ineffective assistance of counsel. Strategic choices made after thorough investigation of the law and facts regarding plausible options are virtually unchallengeable. To prove ineffective assistance for counsel's failure to call a witness, the movant must show that: (1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness's testimony would have produced a viable defense. To establish ineffective

8

assistance of counsel based on failure to present an expert witness, the movant must show what the evidence would have been had the expert testified. When trial counsel believes that a potential witness's testimony would not unequivocally support his client's position, counsel's decision not to call the witness is a matter of trial strategy and does not constitute ineffective assistance.

The defense maintained at trial that the victim died of a heart attack, not from strangulation. The movant argues that Dr. Heilbronner would have testified that the movant suffered brain damage from a traumatic head injury in 2004, and that the resulting impairment was exacerbated with the movant's alcohol and Xanax abuse. Dr. Heilbronner's testimony, the movant contends, would have explained his strange behavior and the incriminating statements he made at the bank and during police interrogation. The movant maintains that had Dr. Heilbronner testified, the trial court would have understood the movant's impairment. As a result, the trial court would have discounted the movant's statement at the bank that the victim had already died of an overdose—made before the time the movant later claimed he found the victim's body—and his inconsistent and dishonest statements to police. Having discounted the movant's incriminating statements and behavior, the movant argues, the trial court then would have believed the defense theory that the victim died of a heart attack.

The motion court heard extensive testimony from Dr. Heilbronner at the evidentiary hearing, and watched the video of the movant's hours of police interrogation. The motion court concluded that Dr. Heilbronner's testimony was not credible. Dr. Heilbronner evaluated the movant in 2014, nearly three years after police arrested the movant for the victim's murder. Yet, Dr. Heilbronner concluded that the movant suffered a diminished mental state at the time of the victim's death in 2011, and accordingly should not be held fully responsible for the murder. Dr. Heilbronner admitted during his testimony at the motion hearing that he "should probably not have included that" conclusion in his report. Dr. Heilbronner's theory that the movant's mental impairment caused his odd behavior at the bank and with police depended on the movant being under the influence of alcohol and drugs the day of the victim's death. The motion court observed that Dr. Heilbronner relied only on the movant's self-reported use of alcohol and drugs when no other evidence in the record supported the movant's assertion that he had used drugs and alcohol on the day in question. For example, Lieutenant Right testified that he has training in recognizing impairment related to drug or alcohol use, but that the movant did not appear to be under the influence during his police interview. After viewing the video of the movant's police interview, the motion court observed that the movant claimed confusion and problems related to his brain injury only when police confronted him with inconsistencies and evidence that contradicted his statements. Dr. Heilbronner, however, found the movant to be a reliable reporter.

Furthermore, the video of the movant's police interview was not admitted into evidence at trial, but the State likely would have introduced it had Dr. Heilbronner testified. This video would have harmed the movant's case because it showed that the movant claimed impairment and confusion primarily when, as the motion court observed, police caught him lying. If a potential witness's testimony would not unqualifiedly support the defendant's position, counsel's decision not to call the witness does not constitute ineffective assistance. Similarly, we will not deem counsel ineffective for making a considered, strategic decision to forgo certain evidence to avoid opening the door to additional damaging evidence. We defer to the motion court's superior opportunity to judge the credibility of witnesses. And trial counsel testified at the evidentiary hearing that he spoke with Dr. Heilbronner, and determined that his testimony would not explain adequately the

9

> movant's strange behavior, thus demonstrating that trial counsel made a considered, strategic decision. We are unconvinced by the movant's argument that Dr. Heilbronner's testimony at trial would have explained away the movant's incriminating statements and suspicious behavior, thus leaving the trial court with a reasonable doubt that a homicide occurred. In addition, Dr. Heilbronner's testimony would not have explained the movant's admission to another inmate at the Lincoln County Jail that the movant killed the victim by strangling her. The movant has failed to show that a reasonable probability exists that, but for counsel's errors, the result of the trial would have been different. The motion court did not clearly err on this issue, and we deny the movant's first point.

Doc. [12-9] at 3-6 (citations omitted and cleaned up).

Petitioner similarly claims that his trial counsel was ineffective in failing to call Dr. Heilbronner to testify at the guilt phase of his trial, asserting that the trial judge would have given him a lesser sentence had he heard this mitigating testimony. Doc. [1] at 22. Petitioner brought this claim in his rule 29.15 motion, and on appeal, the Missouri Court of Appeals upheld the motion court's denial of the claim, stating:

> This claim relies on the same arguments and evidence presented in the movant's first point. The motion court explicitly rejected Dr. Heilbronner's opinion that the movant suffered from mental impairment on the date in question as the result of a brain injury with his impairment exacerbated by drug and alcohol use. The motion court found not credible Dr. Heilbronner's opinion that the movant had greater mental impairment on a day some three years before Dr. Heilbronner evaluated him based on the movant's self-reporting. We find it unlikely that the trial court would have found Dr. Heilbronner's testimony any more credible, especially in view of the record at sentencing that cited the movant's history of burglary, disorderly conduct, and domestic violence even before his brain injury. In addition, had Dr. Heilbronner testified at sentencing, then all of the movant's records that Dr. Heilbronner reviewed could have been presented to the court and emphasized by the State. These records included reports from doctors who believed the movant was exaggerating his symptoms and had the potential for explosive behavior. Trial counsel testified that such evidence would not have helped the movant. The movant has failed to establish a reasonable probability that the trial court would have given him a lesser sentence had Dr. Heilbronner testified at sentencing. Therefore, we deny the movant's second point.

Doc. [12-9] at 7-8 (cleaned up).

This Court must adopt a "strong presumption" that defense counsel's conduct fell within the wide range of reasonable representation. *Strickland*, 466 U.S. at 689. "The strength of the presumption" that defense counsel's decision not to call a witness is reasonable trial strategy "turns on the adequacy of counsel's investigation." *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. After reviewing the relevant portions of the record, the Court finds ample support for the Missouri Court of Appeals' conclusion that counsel's strategic decision not to call Dr. Heilbronner was reasonable under the circumstances.

The record shows that Petitioner's trial attorney was aware of Petitioner's brain injury and history of abusing alcohol, and that he hired Dr. Heilbronner to evaluate the impact of Petioner's medical condition.  Doc. [12-19] at 109-10.  Petitioner's trial counsel seriously considered calling Dr. Heilbronner as a witness, and even asked him to prepare to testify, but on the second day of trial decided that it would be best not to call him.  *Id*. at 111.  Petitioner's trial counsel testified at the Rule 29.15 motion hearing that his primary goal in having Dr. Heilbronner testify was to explain Petitioner's inconsistent statements to law enforcement, as well as his odd behavior at the bank, but that after speaking with Dr. Heilbronner around the time of trial, he decided that his testimony would not be helpful in that respect.  *Id*. at 112-13.

Upon review of the record, the undersigned concludes that Petitioner's trial attorney's determination not to call Dr. Heilbronner was a reasonable strategic decision under the circumstances of the case.  Dr. Heilbronner was expected to testify that Petitioner was mentally impaired at the time of the murder.  *Id*. at 101.  But the State had two reports prepared by medical examiners stating that Petitioner was competent to stand trial.  *Id*.  And, as noted by the Missouri Court of Appeals, had Dr. Heilbronner testified at trial, the State would almost certainly have introduced the video of Petitioner's interrogation, which showed that he acted confused only immediately after being caught in a lie.  Doc. [12-9] at 5-6.  It was reasonable to avoid opening the door to such damaging evidence.  Petitioner has not overcome the "strong presumption that [his] counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy."  *Strickland*, 466 U.S. at 689.

On review of the record, the Missouri Court of Appeals did not unreasonably apply *Strickland* to Petitioner's ineffective assistance claim based on counsel's failure to call Dr. Heilbronner, and its decision was not an "unreasonable determination of the facts in light of the evidence presented in state court."  *Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir. 2010); 28 U.S.C. § 2254(d).  Therefore, the Court denies habeas relief on Grounds 3 and 4.

## Conclusion

Petitioner is not entitled to federal habeas relief, and he has not made a substantial showing of the denial of a constitutional right, as required for a certificate of appealability to issue.  28 U.S.C. § 2253(c); *see also Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (a "substantial showing" is a showing that the "issues are debatable among reasonable jurists, a

court could resolve the issues differently, or the issues deserve further proceedings"). Thus, the Court will not issue a certificate of appealability as to any claims raised in the petition.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, Doc. [1], is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED with prejudice**.

**IT IS FINALLY ORDERED** that the Court shall **NOT ISSUE** a certificate of appealability as to any claim raised in the amended petition.

A separate judgment accompanies this Memorandum and Order.

Dated this 28th day of March, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE